## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **VALIAN MOUTON, ET AL.** | § | |
| | § | |
| **VS.** | § | **2:25-CV-00143-AVH-TPL** |
| | § | |
| **EQUIPMENTSHARE.COM INC** | § | |

---

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Respectfully Submitted:

SUDDUTH AND ASSOCIATES, LLC
1109 Pithon Street
Lake Charles, Louisiana 70601
Tel: (337) 480 – 0101
Fax: (337) 419 – 0507
Email: John@saa.legal

/s/ John L. Fourcade, III
JOHN L. FOURCADE, III (#40364)
*Counsel for Plaintiffs*

1

## TABLE OF CONTENTS

**INTRODUCTION** ...................................................................................................................6

**STATEMENT OF FACTS**.....................................................................................................6

    a.   The Mouton family's communication with Equipmentshare. .................................6

    b.   The Moutons lease termination with ERA Helicopters. ..........................................8

**STANDARD OF REVIEW** ...................................................................................................9

**LAW AND ARGUMENT** ......................................................................................................9

    I.     There was an oral lease agreement between the Plaintiffs and Equipmentshare.....9

        a.      Equipmentshare perfected the oral lease when they acted on it and cannot withdraw on the pretext that the lease was no reduced to writing. ................10

    II.    The Plaintiffs relied on Equipmentshare's word to their detriment. .....................12

        a.   The Moutons only terminated their ERA lease because of the assertions of Equipmentshare...................................................................................................13

        b.   The Moutons reliance on Equipmentshare's words and actions were justified.....14

    III.   Plaintiffs haven not unjustly enriched themselves..............................................16

**CONCLUSION** ...................................................................................................................17

## TABLE OF AUTHORITIES

### CASE LAW

*Carter v. Huber & Heard, Inc.*
95-142 (La. App. 3 Cir. 5/31/95), 657 So. 2d 409, writ denied, 95-1662 (La. 10/6/95), 661 So. 2d 471 ……………………………………………………………………………………………..14

*Celotex Corp. v. Catrett*
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)...........................................................9

*Clement v. Taylor*
382 So. 2d at 231 .......................................................................................................................9

*Daniels v. City of Arlington*
246 F.3d 500 (5th Cir. 2001) ....................................................................................................9

*Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*
530 F.3d 395 (5th Cir. 2008) ..........................................................................................9

*JCD Marketing Co. v. Bass Hotels & Resorts, Inc.*
812 So. 2d 834 (La. App. 4 Cir. 2002) ..........................................................................16

*Kay v. Carter*
243 La. 1095, 150 So. 2d 27 (1963) ...............................................................................9

*Morris v. People's Bank & Trust Co.*
580 So. 2d 1029 (La. App. 3 Cir.), writs denied, 588 So. 2d 101, 102 (La. 1991), appeal after remand, 93-934 (La. App. 3 Cir. 7/27/94), 642 So. 2d 225 ......................................12

*Russell v. City of New Orleans*
732 So. 2d 66 (La. App. 4 Cir. 1999) .................................................................10, 11, 12

*Suire v. Lafayette City–Parish Consolidated Government*
2004-1459 (La. 4/12/05), 907 So. 2d 37, 59 ................................................................12

*Tolan v. Cotton*
572 U.S. 650, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014) ............................................9

## STATUTES

Fed. R. Civ. P. 56(c) ......................................................................................................9

La. Civ. Code art. 1947 ................................................................................................14

La. Civ. Code art. 1967 ...........................................................................................12, 14

La. Civ. Code art. 2670 ..................................................................................................9

La. Code Civ. P. art. 966 ................................................................................................9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **VALIAN MOUTON, ET AL.** | § | |
| | § | |
| **VS.** | § | **2:25-CV-00143-AVH-TPL** |
| | § | |
| **EQUIPMENTSHARE.COM INC** | § | |

EXHIBIT LIST

| | |
|---|---|
| EXHIBIT A: | October 11, 2019 email – discussing land |
| EXHIBIT B: | Deposition of Kodi Smith |
| EXHIBIT C: | Deposition of Valian Mouton |
| EXHIBIT D: | December 30, 2019 text message – Will send over |
| EXHIBIT E: | December 30, 2019 Email – $25,000.00 wire request |
| EXHIBIT F: | December 30, 2019 Email – signer en route |
| EXHIBIT G: | December 30, 2019 $25,000.00 wire completion |
| EXHIBIT H: | Deposition of Jonathan Miller |
| EXHIBIT I: | January 6, 2020 - $5,000.00 wire request |
| EXHIBIT J: | January 6, 2020 - $5,000.00 rent payment |
| EXHIBIT K: | January 6, 2020 – New Vendor Request Form |
| EXHIBIT L: | January 10, 2020 – Lease was signed |
| EXHIBIT M: | February 27, 2020 – Lease Modification Request |
| EXHIBIT N: | March 6, 2020 Modification Acceptance |
| EXHIBIT O: | ERA Document Production |
| EXHIBIT P: | Deposition of Yvonne Mouton |

4

EXHIBIT Q:        Deposition of Keith Wade

EXHIBIT R:        Deposition of Tomas Johnston

**MAY IT PLEASE THE COURT:**

## INTRODUCTION

In the wake of the documented evidence and the oral testimony of the parties, there exists a myriad of materially contested facts, resolution of which requires credibility determinations that renders summary judgment disposition improper as a matter of law. For this reason, Equipmentshare's motion must be denied.

## STATEMENT OF FACTS

Resolving factual disputes and accepting inferences in Plaintiffs favor, the relevant facts are as follows: in December 2019 the parties agreed orally to rent the "Cameron" property in the amount of $15,000 per month. The parties then agreed to modify that agreement and enter another oral lease in March 2020. Equipmentshare paid the 1st months' rent and security deposit in accordance with the terms of the 2019 oral lease. The Plaintiffs would not have ended the ERA lease but for the false promises of Equipmentshare.

a. *The Mouton family's communication with Equipmentshare.*

By October 11, 2019, Equipmentshare began speaking internally regarding the property located at 190 Bobbies Lane, Cameron, Louisiana.[1] Equipmentshare contacted Valian Mouton first regarding lease the property.[2] On November 21, 2019, Equipmentshare and members of the Mouton family met at Pat's of Henderson to discuss the lease and the terms.[3] While at Pat's of Henderson, the Mouton's were presented with a "Commercial Letter of Intent to Purchase".[4] The terms of the Commercial Letter of Intent to Purchase did not pertain to the lease negotiations between the parties.[5] Valian Mouton expressed confusion as to the letter of intent to purchase, and

---

[1] *See*, Exhibit A, Deposition of Jonathan Miller Deposition, p. 21-22.
[2] *See*, Exhibit B, Deposition of Kodi Smith, p. 21.
[3] *See*, Exhibit C, Deposition of Valian Mouton, p. 39.
[4] *See*, Exhibit C, Deposition of Valian Mouton, Exhibit 3.
[5] *Id.*

it was expressly told to the Moutons that the letter of intent were mere talking points.[6] Noone in the Mouton family ever signed the "Commercial Letter of Intent to Purchase."

After discussions that night and over the coming month, the parties reached an agreement as to the property (190 Bobbies Lane) and the price ($15,000 per month).[7]

On December 30, 2019, at approximately 11:16 a.m., Keith Wade (hereinafter, "Wade"), an employee of Equipmentshare) text Valian Mouton and Yvonne Mouton that "I **will** get it [the lease] signed within the next 20 minutes and e-mail it over."[8] Shortly thereafter, at 11:29 a.m., Wade requested from Equipmentshare to wire the first month's rent and security deposit for the property.[9] At 11:32, Wade emailed the Moutons stating that he "will" get the lease signed within the next 20 minutes.[10] The Moutons were wired $25,000 from Equipmentshare for first month's rent and security deposit for the property.[11] It was never expressed to the Mouton's that Wade would not send the lease that Miller had already signed. At 1:57 p.m., Jennifer Jones requested minor changes to the agreement. Equipmentshare never cancelled the wire but rather let it continue forward in accordance with the 2019 agreement.

Despite receiving a modification request, Keith Wade, on January 6, 2020, acknowledged that the security deposit and monthly rent transfer was $5,000 short.[12] Shortly thereafter, Equipmentshare wired the $5,000 shortage to the Moutons.[13] The information contained within the wire instructions were labeled as " $2,500 1st month rent adjustment for Cameron … $2,500 security deposit adjustment for Cameron".[14] At no time was this listed as a conditional payment or

---

[6] *See*, Exhibit C, Deposition of Valian Mouton, p. 45-46; and Exhibit B, Deposition of Kodi Smith, p. 26, l. 7-11
[7] *See*, Exhibit B, Deposition of Kodi Smith, p. 24
[8] *See*, Exhibit D.
[9] *See*, Exhibit E.
[10] *See*, Exhibit F.
[11] See, Exhibit G. Also see, Exhibit H, Deposition of Jonathan Miller, exhibit 6.
[12] See, Exhibit I and H, Deposition of Jonathan Miller, exhibit 7
[13] See, Exhibit J
[14] See, Exhibit J

earnest money. Also on January 6, 2020 "New Vendor Form" from the Moutons.[15] The new vendor form was to onboard new vendors and ensure timely payments.[16] As of January 6, 2020, Equipmentshare is treating the Mouton family as a new vendor in accordance with the lease terms.

On January 10, 2020, Wade confirmed the agreement, stating "the lease was signed".[17] Jonathan Miller (hereinafter, "Miller") signed the lease agreement but it was never forwarded to the Mouton family.

On February 27, 2020, Wade forwarded, in pertinent part, an email requesting a modification of the oral lease previous perfected among the parties. Wade stated: "we are find with no buyout options for two years and a year-to-year basis after five years. As far as the buyout option, we propose a buyout for one-half of the remaining balance, not to exceed $50,000.00 with a 60 day notice provision of intent to buyout the lease."[18] On March 6, 2020, Jennifer Jones informs that Wade that the Moutons accepted their modified proposal.[19]

   b.  *The Moutons lease termination with ERA Helicopters.*

The Mouton family has been leasing the property made subject to this litigation since 1979.[20] The lease was last amended in 2005, and it was effective until December 21, 2024.[21] The Mouton family approached ERA in 2019 about terminating the lease because someone else was looking at the property.[22] The family was not going to terminate the ERA lease without an ironclad deal.[23] The Mouton's believed, and still do for that matter, that there was a valid lease in place with Equipmentshare. The lease was only terminated with ERA when the Moutons received the

---

[15] *See*, Exhibit K and Exhibit H, Deposition of Jonathan Miller, exhibit 7
[16] *See*, Exhibit H, Deposition of Jonathan Miller, p. 38
[17] *See*, Exhibit L.
[18] *See*, Exhibit M.
[19] *See*, Exhibit N.
[20] *See*, Exhibit O at p. 14
[21] *See*, Exhibit O at p. 15
[22] *See*, Exhibit P, Deposition of Yvonne Mouton, p. 24.
[23] *See*, Exhibit P, Deposition of Yvonne Mouton, p. 22.

agreement with Equipmentshare, and they gave the Moutons payment at that time to take over the property.[24]

## STANDARD OF REVIEW

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citing Fed. R. Civ. P. 56(c)); La. Code Civ. P. Ann. art. 966. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. See *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. See *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Any doubts as to genuine issues of material fact are resolved against the grant of summary judgment and in favor of a trial on the merits. *Clement v. Taylor*, 382 So. 2d at 231; *Kay v. Carter*, 243 La. 1095, 150 So. 2d 27 (1963).

## LAW AND ARGUMENT

**I.    There was an oral lease agreement between the Plaintiffs and Equipmentshare.**

Three things are absolutely necessary to have a valid lease, i.e., thing, price, and consent. La. C.C. art. 2670. It has long been the law that no written agreement is necessary to prefect the lease of an immovable unless the parties contemplate that the lease will be effective only upon the execution of a written agreement. If a verbal lease includes all essential elements and the parties act upon it, neither may withdraw on the pretext that the lease was not reduced to writing. *Russell*

---

[24] *See*, Exhibit B, Deposition of Kodi Smith, p. 21; and Exhibit C, Deposition of Valian Mouton, p. 21.

*v. City of New Orleans*, 98-0927 (La. App. 4 Cir. 2/24/99); 732 So.2d 66 (1999). Because there is no requirement that the contract be in written form, the required elements may be proven through testimony and other corroborating circumstances. Louisiana Code of Civil Procedure art. 1832. Importantly, the existence or nonexistence of a lease is a question of fact. *S. Treats, Inc. v. Titan Props., L.L.C.,* 40,873 (La. App. 2 Cir. 4/19/06), 927 So. 2d 677, 682, <u>writ denied,</u> 2006-1170 (La. 9/15/06), 936 So. 2d 1271.

> a. Equipmentshare perfected the oral lease when they acted on it and cannot withdraw on the pretext that the lease was no reduced to writing.

There can be no dispute that Equipmentshare agreed to lease the property at $15,000 per month and that they sent the first month's rent and security deposit after reaching that agreement. The reasoning of *Russell v. City of New Orleans*, 732 So.2d 66 (La. App. 4 Cir. 1999), is directly applicable and dispositive of Equipmentshare's argument that the absence of a signed lease defeats Plaintiffs' claims as a matter of law. In *Russell*, it was customary for the School Board and the City to reduce their lease agreements to writing. A written lease form was prepared and circulated, but it was never executed due to oversight. Notwithstanding that fact, the Fourth Circuit held that the lease was enforceable because the essential elements - thing, price, and consent - had been agreed upon and the parties acted in conformity with those terms. In short, the School Board paid rent. The court rejected the argument that the lack of a signed writing rendered the agreement unenforceable, holding that where a verbal lease includes the essential elements and the parties perform accordingly, neither may withdraw under the pretext that the agreement was not formally executed.

The present matter mirrors and is strengthened under the reasoning of *Russell*. Here, the essential terms of the lease were agreed upon. Equipmentshare did more than engage in negotiations; it affirmatively represented that the agreement was finalized. It transmitted the first

month's rent and security deposit without reservation or qualification. There was no statement that payment was conditional, no expressed contingency, and no communication that corporate approval remained outstanding at the time of this transaction. Most significantly, Equipmentshare expressly stated that it "will get it signed within the next 20 minutes and e-mail it over." That representation conveyed immediacy and certainty, not contingency. Objectively viewed, this conduct evidences mutual assent to the agreed terms prior to formal execution. At the bare minimum, there is a genuine issue of material fact to overcome Equipmentshare's summary judgment.

Just as in *Russell*, even if it was anticipated that the agreement would be memorialized in writing, Equipmentshare's claim still fails because of its specific action of paying the rent. There is a genuine issue of material fact disputing whether their payment was a good faith payment or a satisfaction of the lease term. But Louisiana law does not elevate form over substance where consent and performance demonstrate the existence of an agreement. The Fourth Circuit made clear that a party cannot accept performance consistent with agreed terms and later avoid its obligations solely because the contemplated written document was not signed. Equipmentshare's attempt to characterize this transaction as incomplete ignores its own conduct - transmitting funds consistent with a lease terms and affirmatively representing imminent execution.

Defendant's reliance on the Letter of Intent to Purchase is misplaced and legally irrelevant to the issue before this Court. The Letter of Intent, by its plain language and in its entirety, pertained exclusively to a proposed purchase of the property, not to the lease agreement at issue in this litigation. It did not govern the formation of a lease. Interestingly, Wade is not even aware of a letter of intent to lease that exists for Equipmentshare's leased properties.[25] As such, it has no

---

[25] See, Exhibit Q, page 24.

bearing on whether a lease was formed. The Letter of Intent therefore neither controls nor negates the formation of the lease at issue.

At minimum, the parallels to *Russell* create genuine issues of material fact as to whether the lease was perfected through agreement and performance. Summary judgment is therefore inappropriate.

**II.      The Plaintiffs relied on Equipmentshare's word to their detriment.**

The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations or silence. *See*, La. C.C. art 1967. To establish detrimental reliance, the Moutons must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. *See*, La. C.C. art 1967. To prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract. La. 1967. Significantly, to prevail of a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contact. *Suire v. Lafayette City-Par. Consol. Gov't*, 2004-1459 (La. 4/12/05), 907 So. 2d 37, 59. The basis for detrimental reliance is the idea that a person should not harm another person by making promises that he will not keep. Recovery of damages therefore requires (a) the existence of a promise and (b) reasonable reliance on that promise to one's detriment. M*orris v. People's Bank & Trust Co.*, 580 So.2d 1029 (La. App. 3 Cir.), writs denied 588 So.2d 101, 102 (La.1991), appeal after remand, 93–934 (La. App. 3 Cir. 7/27/94); 642 So.2d 225. There are numerous issues of material facts for these claims.

   a. The Moutons only terminated their ERA lease because of the assertions of
      Equipmentshare.

The assertion that the Moutons "undisputedly" elected to terminate the ERA lease in May 2019 is directly contradicted by the evidentiary record. The May 2019 discussions between the Moutons and ERA occurred solely because a prospective tenant had expressed interest in leasing the property. At no point did the Moutons agree to an unconditional termination. To the contrary, any termination would occur only if the proposed replacement tenancy fully materialized. The understanding was expressly contingent: the existing lease would end only if a new tenant was secured and the transaction was finalized.

Equipmentshare's suggestion that the Moutons independently terminated the ERA lease for unrelated reasons lacks factual support. The record reflects that the Moutons consistently maintained that termination would occur only if another party was to take over and assume the property. Yvonne Mouton stated "our family would've never let a lease go with ERA if we didn't have a deal".[26] That condition precedent was central to their position. When Equipmentshare represented that the lease transaction was complete and tendered funds consistent with a finalized agreement, the Moutons reasonably concluded that it could cancel the ERA leases.

Despite preliminary conversations in May 2019, the ERA lease was not terminated at that time. The undisputed testimony confirms that termination occurred on December 29, 2019, in direct connection with the Equipmentshare agreement and payment. As Val Mouton stated unequivocally: "It was terminated when we received the agreement with Equipmentshare, and they gave us our payment at that time." Any contention that the lease was terminated months earlier is inconsistent with both the documentary record and sworn testimony.

b.  The Moutons reliance on Equipmentshare's words and actions were justified.

---

[26] Deposition of Yvonne Mouton, p. 61

The existence of a promise and the reasonableness *vel non* of reliance on a promise if there was one, are essentially questions of fact. *Carter v. Huber & Heard, Inc.*, 95-142 (La. App. 3 Cir. 5/31/95), 657 So. 2d 409, 412, writ denied, 95-1662 (La. 10/6/95), 661 So. 2d 471. There is no difference in the present case, and the trier of fact should hear the facts presented on the matter.

Equipmentshare improperly conflates contract formation under La. Civ. Code art. 1947 with detrimental reliance under La. Civ. Code art. 1967. The question here is not whether a fully executed written lease existed. Detrimental reliance operates precisely in circumstances where formal contract formation is disputed, yet one party's representations and conduct foreseeably induce another to change position. The absence of a signed writing does not, as a matter of law, render reliance unjustifiable.

The Moutons would not have cancelled the ERA lease absent Equipmentshare's clear representations that the agreement was finalized and its affirmative act of transmitting the first month's rent and security deposit. The focus under Article 1967 is not whether the parties subjectively intended to perform in the future, but whether a representation was made under circumstances where the promisor should have expected reliance, and whether the promisee in fact relied to his detriment. Those elements are satisfied here.

The conduct and representations on December 30, 2019 are dispositive. After months of negotiations and relationship-building, Equipmentshare confirmed that the agreement would be signed and forwarded payment of the first month's rent and security deposit. At no point was that payment characterized as conditional, tentative, or subject to further approval. The funds were transmitted voluntarily and without reservation. Objectively, those actions communicated finality.

Most significantly, Wade expressly represented that he "will get it signed within the next 20 minutes and e-mail it over." This was not precatory language or a contingent projection. It was

14

a definitive, time-specific commitment. The transfer statements did not state this was contingent either, but rather explicitly stated it was for the first months rent and security deposit, confirming the state of the business relationship. The statement conveyed immediacy and assurance, not discretion. A representation tied to a concrete timeframe signals that execution is complete or imminently certain.

Such an assurance was plainly calculated and reasonable to induce reliance. By committing to execution and pairing that commitment with payment of rent and deposit, Equipmentshare created a reasonable expectation that the transaction was finalized. The Moutons were entitled to treat that representation as reliable and they acted accordingly. The Moutons had a genuine belief that the agreement was completed and an oral lease was entered into once they received the payment:

> "It was terminated when we received the agreement with Equipmentshare, and they gave us our payment at that time. It was around that time that we – we let go of the lease. Matter of fact, I think it was after they paid us. I think they were short, and I called them back. And then they sent the remainder of the agreement that we had made. And so, I mean, you know, that was just an exclamation point for us. It was a done deal. You know, we had the agreement, and then we broke the lease."

Under settled principles of detrimental reliance, a party who makes a clear and definite promise, particularly one accompanied by performance consistent with a completed agreement, cannot later retreat behind the absence of a signed document after the other party has materially changed position. Equipmentshare's representation was sufficiently specific to justify reliance, and the Moutons' decision to terminate the ERA lease was both foreseeable and reasonable under the circumstances.

Defendant's reliance on *JCD Marketing Co. v. Bass Hotels & Resorts, Inc.*, 812 So.2d 834 (La. App. 4 Cir. 2002), is misplaced because the factual circumstances of that case are materially

different. In *JCD Marketing*, the alleged promise arose during ongoing negotiations that were expressly subject formal execution. The communications reflected preliminary discussions rather than definitive assurances of a finalized agreement. The court's determination that reliance was unreasonable turned on the contingent and incomplete nature of the alleged representations.

Here, by contrast, Equipmentshare represented that the agreement was finalized, transmitted the first month's rent and security deposit without reservation, and affirmatively stated that it "will get it signed within the next 20 minutes and e-mail it over." It would be similar to JCD making the payment, the Defendant accepting it, and then the hotel backing out months later. The present matter was not conditional language or an acknowledgment of outstanding approvals. It was a time-specific assurance of imminent execution, coupled with performance consistent with a completed agreement. Unlike *JCD Marketing*, this case involves affirmative conduct and definitive representations sufficient to create, at minimum, a genuine issue of material fact as to whether the Moutons' reliance was reasonable.

For the reasons stated herein, Plaintiffs detrimental reliance claim should survive as the evidence supports that their belief was justifiable and anything contrary would be a pure fact dispute for the fact finder's consideration.

III.    **Plaintiffs haven not unjustly enriched themselves.**

As for the reasons stated herein, there was a valid contract between the parties and the Mouton family relied on Equipmentshare's actions and words their detriment. For those reasons, the Moutons have not been unjustly enriched, but rather unfairly impoverished.

**CONCLUSION**

16

For the foregoing reasons, Defendant's Motion for Summary Judgment should be denied in its entirety.

Respectfully Submitted:

SUDDUTH AND ASSOCIATES, LLC
1109 Pithon Street
Lake Charles, Louisiana 70601
Tel: (337) 480 – 0101
Fax: (337) 419 – 0507
Email: John@saa.legal

/s/ John L. Fourcade, III
JOHN L. FOURCADE, III (#40364)
*Counsel for Plaintiffs*

17